# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| |
|---|
| RICK LOVELIEN, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> UNITED STATES OF AMERICA, *et al.*, <br><br> Defendants. |

Case No. 1:19-cv-00906 (TNM)

## MEMORANDUM OPINION

In April 2014, Plaintiffs Rick Lovelien and Steven Stewart took part in an armed confrontation with federal agents at the Bundy Ranch in Bunkerville, Nevada. Federal authorities later prosecuted them, but a jury acquitted them. Lovelien and Stewart now sue for damages against various federal officials and entities, based on conduct that took place at the standoff and in its aftermath. Before the Court are two Motions to Dismiss, one filed by Defendant Dan Love and the other filed by all other Defendants. For the following reasons, both Motions to Dismiss will be granted, and the Complaint will be dismissed.

**I.**

State and federal officers allegedly "invaded" the Bundy Ranch in April 2014 "[u]nder the guise of collecting grazing fees." Compl. ¶ 21, ECF No. 1. "After hearing about and seeing the use of excessive force and assaults on the Bundys," Lovelien and Stewart traveled to the Bundy Ranch to protest the officers' actions. *Id.* ¶¶ 27–30. They both carried unloaded rifles during the standoff. *Id.* ¶¶ 28–30. According to the Complaint, neither man harmed, assaulted, or threatened any of the officers. *Id.* ¶¶ 28, 30, 32. Both men were later indicted on federal

charges based on their involvement in the standoff, but a jury ultimately acquitted them. *Id.* ¶¶ 33–34, 82.

Lovelien and Stewart now sue the United States, the FBI, the Bureau of Land Management (BLM), and several federal officials in their individual capacities—former Attorneys General Jeff Sessions, Eric Holder, and Loretta Lynch; former FBI Director James Comey; former BLM Director Neil Kornze; and Dan Love, the BLM agent in charge at the standoff. Lovelien and Stewart also sue Comey, Kornze, and Love in their official capacities. Under Federal Rule of Civil Procedure 25(d), the official-capacity claims against Comey, Kornze, and Love proceed against FBI Director Christopher Wray, BLM Deputy Director William Pendley, and BLM agent Brian Richards, respectively. *See* Defs.' Mot. to Dismiss (Defs.' Mem.) at 1 n.1, ECF No. 10.[1] Lovelien and Stewart bring four claims against all Defendants except the United States: (1) unconstitutional retaliation under *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388 (1971) (Count One); (2) unconstitutional use of force under 42 U.S.C. § 1983 (Count Two); (3) unconstitutional retaliation under 42 U.S.C. § 1983 (Count Three); and (4) unconstitutional malicious prosecution under 42 U.S.C. § 1983 (Count Four). *See* Compl. at 17–25.[2] Plaintiffs bring two claims under the Federal Tort Claims Act (FTCA) against all Defendants (Counts Six and Seven). *See id.* at 27–28.

---

[1] All page citations are to the page numbers generated by the Court's CM/ECF system.

[2] Plaintiffs originally brought Counts One through Four against all Defendants, but subsequently withdrew these claims against the United States. Pls.' Opp'n to Mot. to Dismiss ("Pls.' Mem.") at 12, ECF No. 12. The Court will thus dismiss Counts One, Two, Three, and Four against the United States. Count Five alleged unconstitutional deliberate indifference under 42 U.S.C. § 1983, but Plaintiffs have withdrawn that claim in its entirety. *Id.* at 24 n.4. The Court will thus dismiss Count Five against all Defendants.

**II.**

Defendants move to dismiss under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). These motions are ripe for disposition.

To survive a Rule 12(b)(1) motion, a plaintiff must establish that the Court has jurisdiction by a preponderance of the evidence. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992). When ruling on such a motion, the Court must "assume the truth of all material factual allegations in the complaint and construe the complaint liberally, granting plaintiff the benefit of all inferences that can be derived from the facts alleged." *Am. Nat'l Ins. Co. v. FDIC*, 642 F.3d 1137, 1139 (D.C. Cir. 2011) (cleaned up). If the Court determines that it lacks jurisdiction as to any claim, it must dismiss that claim. Fed. R. Civ. P. 12(b)(1), 12(h)(3).

To survive a Rule 12(b)(6) motion, a complaint must contain sufficient factual allegations that, if true, "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Plausibility requires that a complaint raise "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Pleading facts that are "merely consistent with" a defendant's liability "stops short of the line between possibility and plausibility." *Twombly*, 550 U.S. at 557.

The Court must "treat the complaint's factual allegations as true and must grant the plaintiffs the benefit of all inferences that can be derived from the facts alleged." *L. Xia v. Tillerson*, 865 F.3d 643, 649 (D.C. Cir. 2017) (cleaned up). The Court must consider only "the facts alleged in the complaint, any documents either attached to or incorporated in the complaint and matters of which [the court] may take judicial notice." *Hurd v. District of Columbia*, 864 F.3d 671, 678 (D.C. Cir. 2017) (alteration in original; internal quotation omitted). Courts need

not accept the truth of legal conclusions or "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Iqbal*, 556 U.S. at 678.

### III.

The Court is now quite familiar with the standoff at the Bundy Ranch. This Court recently dismissed a case raising from the same standoff against many of the same defendants brought by the same counsel. *See Bundy v. Sessions*, 387 F. Supp. 3d 121 (D.D.C. 2019), *appeal docketed*, No. 19-5183 (D.C. Cir. June 20, 2019). The plaintiff in that case was Ryan Bundy. Like Lovelien and Stewart, Bundy alleged that state and federal officers "invaded" his ranch, that he participated in the ensuing standoff while armed, and that he did not harm or threaten any of the officers. *Id.* at 124. Bundy was indicted on federal charges for his involvement in the standoff, but a district judge ultimately declared a mistrial based on prosecutorial misconduct. *Id.* Bundy sued Sessions, Holder, Lynch, Comey, and Kornze under *Bivens* and 42 U.S.C. § 1983 for their alleged roles in the standoff and the ensuing prosecution. *Id.*

Bundy's claims failed "for many reasons." *Id.* at 125. All claims based on conduct during the standoff were time-barred, and the complaint did not plausibly allege that the *federal* officials had been acting under color of *state* law. *Id.* at 125–27. Absolute immunity barred Bundy's prosecution-related claims against the former Attorneys General, and the complaint did not allege that Comey or Kornze personally participated in the decision to prosecute Bundy. *Id.* at 127–30.

The instant case has done little to improve on *Bundy*. Several of Plaintiffs' claims mirror those made in *Bundy*, and Defendants make arguments for dismissal that are identical to those this Court accepted before. *See* Defs.' Mem. at 23–27; Love Mot. to Dismiss ("Love Mem.") at 12–14, 20–25, ECF No. 17-1. As to these claims, Plaintiffs have not meaningfully distinguished

*Bundy*, nor have Plaintiffs convinced the Court that it wrongly dismissed any claims in *Bundy*. *See* Pls.' Opp'n to Mot. to Dismiss ("Pls.' Mem.") at 7–12, ECF No. 12; Pls.' Opp'n to Love's Mot. to Dismiss ("Pls.' Opp'n to Love") at 7–9, ECF No. 18.

### A.

Counts One, Two, Three, and Four assert claims for damages under *Bivens* and 42 U.S.C. § 1983. Compl. at 17–25. One difference between this case and *Bundy* is that Plaintiffs here sue not only federal officials in their individual capacities, but also the FBI, the BLM, and three official-capacity defendants—Wray, Pendley, and Richards. Defendants argue that sovereign immunity bars Counts One through Four against this latter set of defendants. Defs.' Mem. at 27–28. Sovereign immunity bars suits for damages against federal agencies and officials in their official capacity, absent a specific waiver by the Government. *See Clark v. Library of Congress*, 750 F.2d 89, 102–04 (D.C. Cir. 1984). Plaintiffs fail to point to any specific waiver for the claims brought in Counts One through Four. The Court thus lacks subject matter jurisdiction over these claims as to the two agency-defendants and the three official-capacity defendants. *See Dye v. United States*, 516 F. Supp. 2d 61, 70–71 (D.D.C. 2007).

Indeed, Plaintiffs offer no response to Defendants' discussion of sovereign immunity. *See* Pls.' Mem. at 5–24; *see also id.* at 12 ("Plaintiffs hereby dismiss Counts One through Five as to Defendant United States of America only. These claims are being brought against the individual Defendants, not the United States of America."). The Court may therefore conclude that Plaintiffs have conceded Defendants' argument on this point. *See Wannall v. Honeywell, Inc.*, 775 F.3d 425, 428 (D.C. Cir. 2014).

For these reasons, the Court will dismiss Counts One, Two, Three, and Four against the FBI, the BLM, and the three official-capacity defendants.

**B.**

Turning to the claims against the individual-capacity defendants, the Court begins with a procedural issue specific to Defendant Dan Love. Love timely moved to dismiss on September 6, 2019. *See* 8/5/19 Minute Order. Plaintiffs' opposition to that motion was due on or before September 20. *See* LCvR 7(b). Plaintiffs filed their opposition one day late and never sought or received an extension. The Court may therefore treat Love's motion as conceded. *See id.*; *Wannall*, 775 F.3d at 428. It may even be abuse of discretion for the Court not to do so. *See Smith v. District of Columbia*, 430 F.3d 450, 456–57 (D.C. Cir. 2005). The Court will thus dismiss all counts against Love. In any event, none of them states a claim for relief against Love. *See infra* Sections III.C, III.D, III.F, and III.G.

**C.**

Defendants contend that Count Two and a portion of Count One—based on conduct during the standoff—are untimely. Defs.' Mem. at 23; Love Mem. at 12–13. These are claims under *Bivens* and 42 U.S.C. § 1983, and since this District is the chosen forum, the Court looks to D.C. law for the applicable statute of limitations. *See Jones v. Kirchner*, 835 F.3d 74, 80 (D.C. Cir. 2016). Defendants assert that a three-year limitations period applies here, and Plaintiffs do not dispute this. Defs.' Mem. at 23; Love Mem. at 12; Pls.' Mem. at 9; *see* D.C. Code § 12-301(8).

The standoff took place in April 2014, but Plaintiffs filed their Complaint this year, so any claims based on conduct during the standoff fall outside the three-year limitations period. Compl. ¶ 21. Plaintiffs urge that the relevant filing date is August 8, 2018, when they filed a

6

substantially similar action in this District. Pls.' Opp'n to Love at 8; *see* Compl. at 29, *Lovelien v. United States*, No. 18-cv-01869 (D.D.C. Aug. 8, 2018), ECF No. 1. Plaintiffs complain that when the court transferred that matter to the District of Nevada, they were "forced" to dismiss the action and to refile here on March 29, 2019. Pls.' Mem. at 9. But even if August 8, 2018, is the relevant date of filing, that is still more than three years after April 2014.

Plaintiffs have a second excuse. They insist that the limitations period should be tolled because they were incarcerated from March 3, 2016, until August 22, 2017. *Id.* This argument fails for the same reason it did in *Bundy*. *See* 387 F. Supp. 3d at 125. Under the relevant D.C. statute, imprisonment tolls a limitations period only if the plaintiff's action accrues *during* the imprisonment. *See* D.C. Code § 12-302(a)(3). The claims that are based on conduct during the standoff accrued *at the time of the standoff*, when Plaintiffs were *not* imprisoned, so § 12-302(a)(3) does not save these claims. Unlike in *Bundy*, Plaintiffs here do not argue for equitable tolling, so the Court need not consider whether that doctrine applies. *See* Pls.' Mem. at 9; Pls.' Opp'n to Love at 8.

The Court will therefore dismiss as untimely Count Two and any portion of Count One that is based on conduct during the standoff.[3]

---

[3] The only counts that Defendants characterize as based on conduct during the standoff are Count Two, a portion of Count One, and Count Five (which Plaintiffs have withdrawn in its entirety). *See* Defs.' Mem. at 23; Love Mem. at 12–13. Plaintiffs do not dispute or otherwise respond to that characterization. *See* Pls.' Mem. at 9; Pls.' Opp'n to Love at 8. The Court observes, however, that the only discernible difference between Counts One and Three, as pleaded, is that the former is a claim under *Bivens* and the latter is a claim under 42 U.S.C. § 1983. *See* Compl. ¶¶ 83–91, 110–21. If a portion of Count Three is based on conduct during the standoff, the Court would also dismiss that portion of Count Three as untimely.

**D.**

Defendants next maintain that Counts Two, Three, and Four—all claims under 42 U.S.C. § 1983—must be dismissed against the individual-capacity Defendants because none of these federal officials was acting under color of state law. Defs.' Mem. at 23–24; Love Mem. at 13–14. To state a claim under § 1983, Plaintiffs "must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). "The traditional definition of acting under color of state law requires that the defendant in a § 1983 action have exercised power possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law." *Id.* at 49 (cleaned up).

The Complaint does not plausibly allege that any of the federal officials were "clothed with the authority of state law." As in *Bundy*, the contention here is that the federal officials conspired with and directed state officials to violate Plaintiffs' constitutional rights. Pls.' Mem. at 7–8; Pls.' Opp'n to Love at 8–9; *see* Compl. ¶¶ 18, 55, 72, 95, 115, 117, 125–26, 129. At most, this means that the *state officials* may have been acting under color of *federal law*. *See Bundy*, 387 F. Supp. 3d at 127. But not the reverse. Plaintiffs do not allege that the federal officials had or used any authority granted by Nevada law, nor would it be plausible to so allege here. *Id.* The Court will therefore dismiss Counts Three and Four against the individual-capacity defendants—Sessions, Holder, Lynch, Comey, Kornze, and Love. This reasoning is an alternative ground for dismissing Count Two against these defendants.

**E.**

Defendants urge that Count Four—which alleges malicious prosecution under the Fourth Amendment—and the portions of Counts One and Three that allege retaliatory prosecution under the First Amendment should be dismissed against the former Attorneys General based on

8

absolute prosecutorial immunity. Defs.' Mem. at 24. This immunity shields prosecutors from liability under both 42 U.S.C. § 1983 and *Bivens* for "initiating a prosecution." *Imbler v. Pachtman*, 424 U.S. 409, 431 (1976); *see Moore v. Valder*, 65 F.3d 189, 192–93 (D.C. Cir. 1995). The conduct that Count Four challenges—and the conduct that the prosecution-related portions of Counts One and Three challenge—is Defendants' *decision* to prosecute Plaintiffs. *See* Compl. ¶¶ 87, 90, 114, 117, 125. The challenged conduct thus falls within the scope of absolute immunity. *See Moore*, 65 F.3d at 194.

Plaintiffs counter that absolute immunity is inapplicable here because the former Attorneys General prosecuted them "without probable cause, and based on allegations that they knew to be false." Pls.' Mem. at 10. Specifically, Plaintiffs point to an allegation in the Complaint that they "were incarcerated for over one year and a half, despite the fact that . . . Defendants . . . not only had no evidence of wrongdoing, but also actively destroyed, hid, and buried evidence that would serve to exculpate Plaintiffs." *Id.*; *see* Compl. ¶ 41. This vague assertion is unclear about whether Defendants "destroyed, hid, and buried" exculpatory evidence during a preliminary investigation, or whether Defendants withheld exculpatory evidence from the grand jury or at trial. This distinction matters. Absolute immunity may not protect the former set of actions. *Cf. Buckley v. Fitzsimmons*, 509 U.S. 259, 274–76 (1993) (holding that absolute immunity does not protect a prosecutor's fabrication of evidence during the preliminary investigation of an unsolved crime). But absolute immunity *does* protect a prosecutor who withholds exculpatory evidence at trial or before a grand jury. *See Imbler*, 424 U.S. at 413, 430–31; *Moore*, 65 F.3d at 194. In any event, even with the benefit of the doubt, there are two reasons why Plaintiffs' assertion fails to salvage any of their claims.

9

*First*, Plaintiffs have not brought a cause of action based on Defendants' alleged destruction of exculpatory evidence that is separate from their causes of action for malicious prosecution and retaliatory prosecution. Defendants characterize Count Four as asserting a cause of action for malicious prosecution and the relevant portions of Counts One and Three as asserting causes of action for retaliatory prosecution. *See* Defs.' Mem. at 45–46. Plaintiffs do not dispute this characterization. *See* Pls.' Mem. at 21–23. Both types of claims "rely on the decision to prosecute." *See Moore v. United States*, 213 F.3d 705, 709–10 (D.C. Cir. 2000); *Dellums v. Powell*, 660 F.2d 802, 805–07 (D.C. Cir. 1981). And "instituting a criminal action is precisely the sort of activity that falls within the scope of absolute immunity granted to a prosecuting official such as the Attorney General." *Dellums*, 660 F.2d at 806. In other words, these counts challenge the *decision to prosecute*, which falls within the scope of absolute immunity. *See Moore*, 213 F.3d at 709–10.

*Second*, the Complaint does not sufficiently allege that Sessions, Holder, or Lynch personally participated in any concealment of evidence during a preliminary investigation. Under *Iqbal*, a plaintiff bringing a claim under 42 U.S.C. § 1983 or *Bivens* must plausibly allege "that each Government-official defendant, through the official's own individual actions, has violated the Constitution." 556 U.S. at 676. Conclusory allegations devoid of factual context cannot state a claim. *See id.* at 686. The bald assertion in the Complaint that Defendants covered up exculpatory evidence is just such an allegation. The same is true of other vague allegations that Defendants hid—or ordered others to hide—exculpatory evidence. *See* Compl. ¶¶ 36, 39.

The only example of exculpatory evidence that Plaintiffs cite is a live video feed of the standoff that apparently came to light during the separate trial of Cliven Bundy. *See id.* ¶¶ 37–

38. But the Complaint contains no allegation that Sessions, Holder, or Lynch were personally involved in hiding this evidence, let alone any factual content that would support such an allegation. *See id.* Thus, even if absolute prosecutorial immunity does not cover hiding exculpatory evidence during a preliminary investigation, the Complaint fails to allege that any of the former Attorneys General personally participated in this conduct. Nor is this surprising. Cabinet-level officers are unlikely to be participants in the minutiae of a case like this.

For these reasons, the Court will dismiss the prosecution-related portion of Count One against Sessions, Holder, and Lynch. This reasoning serves as an alternative basis for dismissing Count Four and the prosecution-related portion of Count Three against the former Attorneys General.

## F.

The individual-capacity Defendants next argue that the Complaint does not sufficiently allege their personal participation in the conduct covered by Count Two and portions of Counts One, Three, and Four. Defs.' Mem. at 25–27; Love Mem. at 20–25. The Court agrees.

Count Two and a portion of Count One encompass Defendants' alleged conduct during the standoff. A portion of Count Three also might encompass conduct during the standoff. *See supra* note 3. Plaintiffs point to allegations that the actions at the standoff took place "upon orders from Defendants Sessions, Lynch, Holder, Comey, and Kornze;" that Comey and Kornze "directly" and "personally" used their agencies to violate Plaintiffs' rights; and that Sessions, Lynch, and Holder "ordered, commanded, and directed, and/or ratified the assault on the Bundy Ranch." Pls.' Mem. at 11–12; *see* Compl. ¶¶ 21, 23, 25–26. But no factual assertions support these conclusory allegations. *See* Compl. ¶¶ 48–55. Such "naked assertions devoid of further factual enhancement" are insufficient to state a claim. *Iqbal*, 556 U.S. at 678 (cleaned up).

11

In any event, Sessions and Lynch were not even in office at the time of the standoff, *see* Compl. ¶ 68, and it is implausible that Holder, Comey, and Kornze—all high-ranking officials working in Washington, D.C., at the time, *see id.* ¶¶ 23, 25–26—were involved in the minute-by-minute decisions made by agents on the ground at the Bundy Ranch. *Accord Argueta v. ICE*, 643 F.3d 60, 75–77 (3d Cir. 2011) (rejecting a claim that high-ranking officials directly participated in allegedly unlawful raids). Since the Court has already concluded that any claims based on conduct during the standoff are time-barred, this reasoning serves as an alternative ground for dismissing Count Two and any standoff-related portions of Counts One and Three against Sessions, Holder, Lynch, Comey, and Kornze.

Count Four and portions of Counts One and Three encompass Defendants' alleged prosecution-related conduct. The Complaint nowhere alleges that Love—the BLM agent in charge at the standoff—had anything to do with the decision to prosecute Plaintiffs. *See* Compl. ¶¶ 61–82. The Complaint does allege that the U.S. Attorney for the District of Nevada prosecuted Plaintiffs "at the direction of Defendants Sessions, Comey, Lynch, Kornze, and Holder." Pls.' Mem. at 12; *see* Compl. ¶ 33. But the U.S. Attorney is not a defendant here. And no factual assertions support the allegation that Comey and Kornze were personally involved in the prosecution. *See* Compl. ¶¶ 67–82. The Court will thus dismiss the prosecution-related portion of Count One against Comey, Kornze, and Love. This reasoning serves as an alternative ground for dismissing Count Four and the prosecution-related portion of Count Three against these three Defendants.[4]

---

[4] Counts One and Three also appear to allege that Defendants unlawfully retaliated against Plaintiffs by arresting and incarcerating them. *See* Compl. ¶¶ 86–87, 113, 115. Plaintiffs do not try to separate these episodes from the decision to prosecute them. *See* Pls.' Mem. at 6 ("Defendants, in retaliation for Plaintiffs' exercise of their First Amendment right to protest peacefully, unjustly and without probable cause sent their case before a grand jury, which

## G.

Finally, Defendants maintain that Counts Six and Seven—which assert claims under the FTCA—must be dismissed in their entirety. They first urge dismissal against all Defendants except the United States because the United States is the only proper party-defendant for these claims. Defs.' Mem. at 28–29. Judges of this District have consistently adopted that view, which aligns with the plain language of the FTCA and authority from other circuits. 28 U.S.C. §§ 1346(b)(1), 2679(a), (d)(1); *see, e.g.*, *Hall v. Admin. Office of U.S. Courts*, 496 F. Supp. 2d 203, 206 (D.D.C. 2007); *Galvin v. OSHA*, 860 F.2d 181, 183 (5th Cir. 1988).

Plaintiffs appear to construe one provision of the FTCA, 28 U.S.C. § 2680(h), to permit suit *against* "investigative or law enforcement officers of the United States Government." *See* Pls.' Mem. at 13. Not so. Section 2680(h) permits suit under the FTCA *based on* certain intentional torts committed by "investigative or law enforcement officers of the United States Government." But these suits must still proceed against the United States, not the officers or their agencies. *See* 28 U.S.C. §§ 1346(b)(1), 2679(a), (d)(1). On this basis, the Court will dismiss Counts Six and Seven against all Defendants except the United States.

The claims against the United States fail for a different reason. Plaintiffs have narrowed Counts Six and Seven to a single FTCA claim based on the tort of malicious prosecution, citing paragraph 147 of the Complaint. *See* Pls.' Mem. at 12–13. The cited paragraph, however,

---

ultimately led to their indictment and incarceration for nearly a year and a half before they were acquitted of all charges."). The former Attorneys General were therefore personally involved in Plaintiffs' arrest and incarceration only if they ordered their prosecution; but they have absolute immunity for any order to prosecute. And just as the Complaint fails to make a plausible allegation that Comey, Kornze, and Love were personally involved in the prosecution, so too does it fail to make a plausible allegation that these officials were personally involved in Plaintiffs' arrest and incarceration. *See* Compl. ¶¶ 67–82. The Court will therefore dismiss any arrest- or incarceration-related claims in Counts One and Three against Sessions, Holder, Lynch, Comey, Kornze, and Love.

alleges that Defendants' actions constitute, "*inter alia* . . . malicious prosecution *in violation of the Fourth Amendment* . . . under circumstances where the United States, if a private person, would be liable to Plaintiffs in accordance with the laws of the District of Columbia and the fifty states of the United States." Compl. ¶ 147 (emphasis added). To be cognizable under the FTCA, a claim must allege a tort under "the law of the place where the act or omission occurred," *i.e.*, local law; a claim that alleges a *constitutional* tort is not cognizable under the FTCA. *See* 28 U.S.C. § 1346(b)(1); *FDIC v. Meyer*, 510 U.S. 471, 477–78 (1994).

Even if the Court construes paragraph 147 to allege a non-constitutional tort of malicious prosecution, the paragraph suffers from another problem. It does not allege a tort of malicious prosecution under "the law of the place where the act or omission occurred," but rather broadly alleges a tort of malicious prosecution under the laws of 51 jurisdictions. Arguably, then, Plaintiffs do not plead the elements of an FTCA claim correctly.

In any event, the Complaint fails to allege a plausible claim of malicious prosecution under Nevada law.[5] One element of this tort is lack of probable cause. *See Jordan v. State ex rel. Dep't of Motor Vehicles & Pub. Safety*, 110 P.3d 30, 48 (Nev. 2005), *abrogated on other grounds by Buzz Stew LLC v. City of N. Las Vegas*, 181 P.3d 670, 672 n.6 (Nev. 2008). "[I]n a malicious prosecution case, the commitment and indictment of a defendant constitutes prima facie evidence that probable cause for criminal prosecution existed," but a plaintiff can rebut this *prima facie* evidence "with a relevant showing of false testimony or suppressed facts." *Id.* at 49

---

[5] Defendants assert that Nevada is "the place where the act or omission occurred." Defs.' Reply at 10, ECF No. 16. Plaintiffs fail to specify what they think the relevant "place" is. *See* Pls.' Mem. at 12–13. The Court observes that the individual Defendants were all allegedly acting "in and from" the District of Columbia. Compl. at 2–3. But Plaintiffs were prosecuted in the District of Nevada. *Id.* ¶¶ 33, 35. The Court will thus apply Nevada law, particularly given Plaintiffs' failure to specify what law the Court should apply.

n.65 (citing *Ricord v. Cent. Pac. R.R. Co.*, 15 Nev. 167, 180 (1880)). Here, there is *prima facie* evidence of probable cause, as a grand jury indicted Plaintiffs, and judges ordered both Plaintiffs detained after their arrest. *See* Defs.' Mem. Ex. 1 at 8 (Superseding Indictment); *id.* Ex. 3 at 2–3 (Stewart Detention Order); *id.* Ex. 4 at 2 (Lovelien Detention Hr'g Minute Sheet).[6]

Plaintiffs contend that they have alleged enough wrongful conduct to overcome the *prima facie* evidence of probable cause. Pls.' Mem. at 23. They point to a paragraph in the Complaint baldly alleging that "[e]ach Defendant, working jointly and in concert, engaged in the obstruction of justice by destroying and spoiling evidence and hiding exculpatory evidence to try to obtain wrongful convictions against Lovelien and Stewart." Compl. ¶ 36; *see* Pls.' Mem. at 23. But this sort of conclusory allegation cannot permit a reasonable inference of misconduct. *See Iqbal*, 556 U.S. at 679 ("[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'— 'that the pleader is entitled to relief.'" (second alteration in original) (quoting Fed. R. Civ. P. 8(a)(2))).

The Complaint does contain some references to the prosecutorial misconduct that resulted in dismissal of charges against Cliven and Ryan Bundy. *See* Compl. ¶¶ 37, 75–81. But prosecutors tried Plaintiffs *separately* from the Bundys, and their trial proceeded to verdict. *See id.* ¶¶ 37, 75, 82. Plaintiffs have failed to plead facts supporting an inference that misconduct tainted *their* prosecution.[7]

---

[6] These exhibits are all public court records. The Superseding Indictment was unsealed in 2016. *See* Defs.' Mem. Ex. 2 at 10. The Court takes judicial notice of these records, which it may do at this stage of proceedings. *See Hurd*, 864 F.3d at 678, 686. Plaintiffs do not dispute the accuracy of these records or otherwise comment on Defendants' inclusion of them as exhibits in its Motion to Dismiss. *See* Pls.' Mem. at 5–24.

[7] Plaintiffs opine that "probable cause is even more lacking than with the Bundys, as Plaintiffs Stewart and Lovelien were acquitted of charges, whereas charges against the Bundys were

Plaintiffs appear to blame the secrecy of grand jury proceedings for their inability to plead more specific facts. *See* Pls.' Mem. at 23. This argument is a red herring. The indictment, which describes the case against Plaintiffs, has been unsealed for more than three years. *See* Defs.' Mem. Ex. 1; *id.* Ex. 2 at 10. Plaintiffs have been to trial, where, they allege, the prosecutors presented evidence that was "non-existent and so much in favor of Plaintiff[s]." Compl. ¶ 44. It defies "judicial experience and common sense" to believe that Plaintiffs cannot make more specific allegations at this stage about what evidence was false, fabricated, or wrongfully withheld as part of their prosecution. *Iqbal*, 556 U.S. at 679; *see Lewis v. City of New York*, 591 F. App'x 21, 22 (2d Cir. 2015) ("[W]e find it difficult to believe that Lewis was unable to make more specific allegations regarding any fabrication in the State's evidence in the criminal proceeding, where he was present throughout the subsequent trial on the indictment.").

For these reasons, Plaintiffs have failed to plead a plausible claim of malicious prosecution under Nevada law. Since malicious prosecution is Plaintiffs' only professed basis for their FTCA claims, *see* Pls.' Mem. at 13, they have failed to plead a plausible FTCA claim against the United States. The Court will thus dismiss Counts Six and Seven against the United States.

---

dismissed due to gross prosecutorial misconduct." Pls.' Mem. at 21; Pls.' Opp'n to Love at 17. But of course, proof beyond a reasonable doubt is a more demanding standard than probable cause, *see Sheriff, Clark Cty. v. Burcham*, 198 P.3d 326, 332–33 (Nev. 2008), so acquittal does not vitiate probable cause.

## IV.

For all these reasons, both Motions to Dismiss will be granted, and Plaintiffs' Complaint will be dismissed.[8] A separate Order will issue.

Dated: November 18, 2019                            TREVOR N. McFADDEN, U.S.D.J.

---

[8] Plaintiffs list "Does 1-100, inclusive" as Defendants, noting that these are "other BLM and FBI agents to be named later," after discovery. Compl. at 2–3. But Plaintiffs bring each cause of action against "All Named Defendants." *Id.* at 17, 19, 22–23, 25, 27–28. Plaintiffs fail to make any argument for why this action should proceed against the unnamed Does if no claims against the named defendants survive. *See* Pls.' Mem. at 5–24. The Court will thus dismiss the Complaint in its entirety.